# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| WILLIAM S. NICOLAS | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:05-CV-442 (TJW) |
| | § | |
| MCI HEALTH AND WELFARE PLAN | § | |
| NO. 501, ET AL., | § | |
|     Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

**I.  Introduction**.

William Nicolas challenges the denial of long term disability benefits by Prudential Insurance Company of America as claims administrator for MCI Health and Welfare Plan No. 501.[1] The court previously granted the parties' joint motion regarding trial submissions and approved the submission of this case on the documentary evidence. After considering the evidence and the arguments of the parties, the court concludes that the plaintiff has demonstrated that the administrator abused its discretion by denying the plaintiff's benefits under the plan. The court renders judgment for the plaintiff and reverses the decision of the administrator.

**II.  Discussion.**

    **A.  Factual Background and Procedural Posture.**[2]

William Nicolas ("Nicolas") worked as a Senior Network Engineer II at MCI WorldCom

---

[1] By order dated January 11, 2006, the court dismissed Prudential Insurance Company of America as a party to the lawsuit.

[2] The court renders this opinion pursuant to Rule 52. Any finding of fact contained in this opinion that is actually a conclusion of law should be treated as such. Any conclusion of law contained in this opinion that is actually a finding of fact should be treated as such.

Network Services, Inc. ("MCI"). Nicolas was covered by the MCI Health and Welfare Plan No. 501("Plan"), which provided long term disability benefits. The Plan is self funded. Prudential Insurance Company of America ("Prudential") administers long term disability benefit claims for the Plan.

On or about July 1, 2003, Nicolas stopped working for MCI claiming that he was disabled as a result of Crohn's disease,[3] colitis,[4] fibromyalgia[5], myalgia[6], depression, and neck and back pain. On or about November 20, 2003, after qualifying for and receiving short-term disability benefits, Nicolas submitted a claim for long term disability benefits under the Plan. By letter dated January 26, 2004, Prudential denied Nicolas's claim. In that letter, Prudential stated that Nicolas's medical conditions would not prevent him from performing his job responsibilities. Prudential noted that a Senior Network Engineer II position was predominantly sedentary in nature.

In August 2004, Nicolas filed his first appeal of Prudential's denial of long term disability benefits. Nicolas submitted additional medical information from his physicians and also submitted statements from several co-workers. Prudential then conducted a vocational analysis of Nicolas's regular occupation and a clinical review of Nicolas's claims by Susan Williams, RN and Paula

---

[3] Crohn's disease is a disorder that causes inflamation of the digestive tract. Common symptoms include abdominal pain and diarrhea. Rectal bleeding, weight loss, arthritis, skin problems, and fever may also occur.

[4] Colitis is a disease that causes inflamation and sores in the lining of the rectum and colon. Common symptoms include abdominal pain and bloody diarrhea. Fatigue, rectal bleeding, and joint pain may also be experienced.

[5] Fibromyalgia is a chronic syndrome characterized by muscle, joint, or bone pain, fatigue, and other symptoms.

[6] Myalgia refers to "muscle pain" and is a symptom of several diseases and disorders.

Arbadji, P.T. By letter dated March 2, 2005, Prudential informed Nicolas that it had upheld its decision denying his claim for long term disability benefits. Prudential's denial letter stated that the current medical information in Nicolas's file did not evidence any sickness or injury that would prevent him from performing the duties of his sedentary occupation.

On or about July 12, 2005, Nicolas submitted a second appeal of Prudential's denial of long term benefits. Prudential had Dr. Richard Day conduct a medical review of Nicolas's claims. Dr. Day concluded that the medical information on file did not include information relating to "current functional activity" and did not support any restrictions for Nicolas. Prudential credited Dr. Day's medical review and, by letter dated August 16, 2005, notified Nicolas that it had upheld its earlier decision denying his long term disability claims.

### B. Parties' Positions.

Nicolas contends that he is entitled to long term disability benefits under the Plan because the Plan failed to establish that there was substantial evidence upon which it could base its decision to deny Nicolas's benefits. Nicolas bases this contention on four arguments. First, Nicolas argues that the Plan failed to make a determination that he was capable of performing his regular occupation. Second, Nicolas argues that the Plan failed to consult with health care professionals who had the appropriate training and experience with regards to Nicolas's medical conditions. Third, Nicolas argues that the Plan failed to obtain a vocational analysis to evaluate his job duties and physical capabilities to perform his regular occupation. Fourth, Nicolas argues that the Plan's evaluation of the evidence in the file was unreasonable. Nicolas asks the court to reverse the decision of the Plan and award past due benefits from July 2003 until the date of judgment and to reinstate his long term disability benefits under the Plan.

The defendant contends that the Plan's denial of Nicolas's long term benefits is supported by substantial evidence in the Administrative Record. The defendant argues that Prudential, its claims administrator, appropriately credited the conclusions of its own physician and that Prudential conducted the proper vocational analysis in this case. Alternatively, in the event that the court finds that Prudential failed to use the appropriate health care professionals or to conduct a proper vocational analysis, the defendant asks the court to remand the claim to the plan administrator for further factual development.

**C.     The Plan**.

The Plan is governed by the 2004 Summary Plan Description ("SPD"). The SPD sets forth the requirements for receiving long term disability benefits as follows:

> "You will be paid a monthly benefit if:
> - you become Disabled while insured under this plan;
> - you are Disabled throughout the Elimination Period;
> - you remain Disabled beyond the Elimination Period;
> - you are, and have been Disabled during the Elimination Period under the Regular Care of a Physician; and
> - you submit Proof of Loss satisfactory to the disability carrier."

The SPD defines "disability" as follows:

> "During the elimination period, you are disabled when:
> - you are unable to perform the material and substantial duties of *your regular occupation* due to your sickness or injury; and
> - you are not working at any job."
>
> "After the elimination period, you are disabled when:
> - you are unable to perform the material and substantial duties of *your regular occupation* due to your sickness or injury; and
> - you have a 20% or more loss in weekly earnings due to the same sickness or injury."

(emphasis added)

4

The SPD further defines "material and substantial duties" as follows:

> "Material and substantial duties:
> - are normally required for the performance of your regular occupation and
> - cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, you will be considered able to perform that requirement if you are working or have the capacity to work 40 hours per week."

**D.  Analysis.**

A denial of benefits under ERISA § 502(a)(1)(B) is reviewed *de novo*, unless the plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Vega v. National Life Ins. Servs., Inc.*, 188 F.3d 287, 295 (5th Cir. 1999) (en banc). If the plan grants the administrator discretion, courts will review the decision only for an abuse of discretion. *Id.* In either event, however, factual determinations made during the court of a benefits review will be overturned only upon the showing of an abuse of discretion. *Vercher v. Alexander & Alexander, Inc.*, 379 F.3d 222, 226 (5th Cir. 2004); *Meditrust Fin'l Servs. Corp. v. The Sterling Chems., Inc.*, 168 F.3d 211, 213 (5th Cir. 1999). The parties agree that the standard of review of Prudential's determination in this case is an abuse of discretion standard.

An administrator abuses its discretion if the decision is made without a rational connection between the known facts and the decision. *Meditrust Fin'l Servs. Corp.*, 168 F.3d at 215. A decision to deny benefits must be based on substantial evidence in the administrative record that "clearly supports the basis for [the] denial." *Vega*, 188 F.3d at 299; *see Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004), *cert denied*, 545 U.S. 1128 (2005). "Substantial evidence is 'more than a scintilla, less than a preponderance, and is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ellis*, 394 F.3d at 273. The court only owes a deference to an administrator's reasoned decision, but owes no deference to an administrator's unsupported suspicions. *Vega*, 188 F.3d at 302. In the absence of some concrete evidence in the administrative record that supports the denial of the claim, the court should find the administrator abused its discretion. *Id*. An administrator may not unreasonably rely on individual statements or pieces of information without considering them within the full context of all the relevant facts and evidence presented. *Lain v. UNUM Life Ins. Co. of America*, 279 F.3d 337, 346-47 (5th Cir. 2002). Bearing these standards in mind, the court now turns to the decision at issue in this case.

        **1.**        **Prudential's Determination of Nicolas's Ability to Perform His Regular Occupation.**

Nicolas initially argues that only the final evaluation by Dr. Day and the reasons for denial set forth in Prudential's letter dated August 16, 2005, are material for this Court's review, not the letters from the previous denials nor the health care professionals' evaluations that led to those previous denials. Based on this argument, Nicolas focuses on Dr. Day's evaluation and contends that Prudential's reliance of Dr. Day's medical conclusions in determining that Nicolas was capable of performing his regular occupation was improper. Nicolas argues that Dr. Day never discussed Nicolas's job duties, the combined effect of his medical conditions, or his restrictions and limitations, such as loss of bowel and bladder control, the need to leave meetings, and frequent absence from work. Nicolas also contends that Prudential improperly focused on the absence of information supporting Nicolas's disability claims. According to Nicolas, Prudential must identify evidence to show that Nicolas was capable of performing his regular occupation despite his medical

condition.

According to the defendant, Dr. Day reviewed all materials submitted by Nicolas, including his medical history, medical information submitted by Nicolas's treating physicians, statements by Nicolas's co-workers, and Nicolas's diagnostic and laboratory results. Dr. Day concluded that the information in the records do not support any limitations or restrictions in Nicolas's work activities. The defendant also argues that the burden was on the plaintiff to submit sufficient evidence that he meets the requirements for long term disability benefits under the terms of the Plan. *Gooden v. Provident Life & Accident Ins.* Co., 250 F.3d 329, 333, 335 (5th Cir. 2001); *Vega*, 188 F.3d at 298-99 (stating that the plan administrator has no duty to reasonably investigate a claim, and that the burden is placed on the claimant to generate evidence relevant to deciding the benefits claim).

The basic dispute is over Dr. Day's medical conclusions. Furthermore, Nicolas cites no authority that this Court's review should be limited to Dr. Day's evaluation and Prudential's letter denying Nicolas's second appeal dated August 16, 2005. The issue in this case is whether the entire administrative record adequately supports the administrator's decision. *Gooden*, 250 F.3d at 333. It does not.

Dr. Day refused to characterize Nicolas as disabled because he concluded that the record contained no information concerning Nicolas's "current functional activity." The record is inconsistent with that statement. Further, Dr. Day's conclusion that "[l]imitations for the conditions listed are not supported with the medical information in [the] record" is erroneous. While it is true Dr. Day lists several letters and diagnoses from various doctors, he does not discuss all of them. Specifically, he omitted discussing one that clearly supports Nicolas's limitations. While it is not necessary to give credit to all of the medical evaluations in the file, it is suspicious that Dr. Day did

7

not discuss Dr. Louis A. Torres, M.D.'s comprehensive and most contemporaneous evaluation of Nicolas's medical condition. Dr. Torres is an internal medicine doctor who was cited in Dr. Day's report for various diagnoses. In a letter dated June 23, 2004, Dr. Torres clearly stated that among other things, this Ulcerative Colitis causes Nicolas to have *loss of bladder and bowel control*. Additionally, the letter made clear that Mr. Nicholas (sic) has been advised of the following restrictions: (1) he is unable to *sit for a period of time longer than 5 minutes* without adjustment; (2) he is unable to *walk for longer than 5 minutes* without adjustment; (3) he is unable to *stand for longer than 5 minutes* at a time; (4) he should *not use a computer for longer than 5 minutes* without adjustment; (5) he should *not experience stress* as it effects (sic) his Ulcerative Colitis; Crohn's Disease and IBS. Dr. Torres explains further that "his inadvertent bowel movements and urinary incontinence as well as the medications for these conditions reduce Mr. Nicholas's (sic) physical and mental abilities to a point where there is no doubt that he is incapable of performing a sedentary job." Dr. Day ignored this report, while at the same time stating that there was no information in the record on Nicolas's limitations or current functional activity.

This report is the most adverse to Prudential's earlier denials. One wonders whether Dr. Day simply overlooked Dr. Torres's June 23 report, or made a conscious decision not to address this report in his recommendation to deny benefits. Putting aside Nicolas's arguments challenging the CV of Dr. Day and the lack of a vocational analysis, this report should have been addressed in his recommendation. Because the decision to deny benefits was based on findings that ignored objective medical evidence in the record, the Plan abused its discretion in denying Nicolas's benefits.

### 2. Scope of Relief.

There is an issue as to whether the Administrative Services Agreement ("ASA") is part of the Plan. Nicolas points out that there is a conflict between the SPD and the ASA because the ASA provides that after 24 months the definition of disability requires inability to "preform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience" whereas the SPD's definition of disability requires the inability to perform "the substantial duties of your regular occupation." Nicolas argues that the ASA does not govern the Plan because the ASA defines the relationship between Prudential and the Plan, and there is no proof in the administrative record that Nicolas received a copy of the ASA. In this Circuit, the language of the SPD controls over conflicting language in other plan documents. *See Washington v. Murphy Oil USA, Inc.*, 497 F.3d 453, 456 (5th Cir. 2007). The court holds, therefore, that the language of the SPD controls.

## III. Conclusion.

In light of the administrative record, the court finds that the Plan Administrator abused its discretion to deny benefits by basing its decisions on findings that ignored objective medical evidence in the record. The court, therefore GRANTS the relief sought by Nicolas and REVERSES the Plan Administrator's decision to deny benefits. Nicolas is entitled past due benefits in accordance with the 2004 SPD since July 2003. The benefit calculation, interest calculation, and any application for attorney's fees, or the parties agreement regarding same, should be submitted within 20 days of this order.

SIGNED this 29th day of September, 2008.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE